UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMED ABDULSATTAR
MOHAMMED,

Case No. No. 17-11484

Plaintiff,

District Judge David M. Lawson

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mohammed Abdulsattar Mohammed ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI respectively of the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [Docket #23] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

## I.   PROCEDURAL HISTORY

In May, 2012 Plaintiff filed applications for SSI and DIB, alleging disability as of

-1-

November 1, 2010 (Tr. 155-167). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on September 10, 2013 in Livonia, Michigan (Tr. 31). Administrative Law Judge ("ALJ") Ramona L. Fernandez presided. On October 24, 2013, ALJ Fernandez found that Plaintiff was not disabled (Tr. 14-26). On December 23, 2014, the Appeals Council denied review (Tr. 1-5). Plaintiff filed suit in this Court on February 17, 2015. *Mohammed v. Colvin,* Case No. 15-10596. On November 30, 2015, the parties stipulated to a remand to the administrative level for further proceedings. *Id., Docket #18.* Upon remand, the Appeals Council noted that the ALJ's finding that Plaintiff's condition did not meet or medically equal a listed impairment was not supported by the opinion of an acceptable medical source (Tr. 459).

ALJ Fernandez held a second hearing on August 11, 2016 (Tr. 377) Plaintiff rtestified (Tr. 384-399), as did Vocational Expert ("VE") John Stokes (Tr. 399-411). On January 27, 2017, ALJ Fernandez again determined that Plaintiff was not disabled (Tr. 357-368). Plaintiff filed suit in this Court on May 9, 2017.

## II. BACKGROUND FACTS

Plaintiff, born April 22, 1962, was 54 at the time of the more recent administrative decision (Tr. 155, 368). He completed 12th grade and worked previously as a dishwasher and interpreter for the United States Army (Tr. 189). He alleges disability as a result of fatigue, diabetes, depression, and back problems (Tr. 188).

### A.  Plaintiff's Testimony (August 11, 2016 Hearing)

*Plaintiff's counsel prefaced his client's testimony by noting that he wasn't "given an opportunity to respond" to answers to interrogatories given by the ALJ to a non-examining medical expert* (Tr. 382)*.  Plaintiff's counsel noted that the interrogatory responses "would support . . . a favorable decision. . . ."* (Tr. 382)*.  He noted that if a "favorable decision" were issued, he would not be required to prepare supplemental interrogatories* (Tr. 382)*.  In response, the ALJ stated that she would try to "obtain a curriculum vitae" of the medical expert* (Tr. 382)*.  Counsel stated that he ought to have "been shown the interrogatory before they were submitted" to the medical expert; and, he ought to have been given the opportunity to submit  his own interrogatories* (Tr. 382)*.  He cited his June 21, 2016 letter to the ALJ which states that he did not receive prior notice, an opportunity to respond, or the opportunity to submit his own interrogatories* (Tr. 382, 609)*.  The June 21, 2016 letter requests "the opportunity to object and examine" the medical expert at the hearing "depending on her response to the interrogatories"* (Tr. 609)*(citing Social Security Administration, Hearings, Appeals, and Litigation Law Manual ("HALLEX"), I-2-5-42, I-2-5-44).*

Plaintiff then offered the following testimony:

 He stood 5' 10" and weighed 222 pounds (Tr. 384).  He held a current driver's license but drove only "a little" (Tr. 385).  Due to psychotropic medication side effects, Plaintiff slept for most of the day and night (Tr. 385-386).  The conditions of hypertension and

diabetes had worsened since the last hearing (Tr. 386).  He lived in an apartment building with a security guard and sat at the guard's post when the guard took a break to smoke or use the bathroom (Tr. 388).  Before ceasing work, he worked for the U.S. Army as a receptionist and interpreter (Tr. 389-390).  Plaintiff's English skills had deteriorated since the last hearing because he did not have an opportunity to speak English on a regular basis (Tr. 390).  He had not looked for work recently due to chronic fatigue (Tr. 390).  He declined to show up for two recently scheduled consultative examinations on behalf of the SSA because his lawyer told him not to attend (Tr. 391).

He was currently unable to work due to his psychiatric condition, frequent bathroom trips, and urinary incontinence (Tr. 392-393).  He was unable to sit or stand for more than 10 minutes  due to back problems (Tr. 393).  He was able to walk for up to 10 minutes (Tr. 395).  His pain medication was limited to Motrin 800 (Tr. 394).  He also had hearing problems in one ear but did not use a hearing aid due to insurance limitations (Tr. 393).  His doctor had advised him to "go out and walk" to combat the condition of diabetes (Tr. 394).

Plaintiff was able to prepare meals and grocery shop but relied on his daughter to do laundry (Tr. 395).  He used an electronic chair to do the grocery shopping (Tr. 395).  He had recently passed a citizenship exam requiring him to read and write sentences in English (Tr. 396).  He was unable to read a newspaper or magazine in English (Tr. 396).  Due to shoulder problems, he experienced difficulty with self-care tasks (Tr. 397).  He experienced nightmares about his experiences in Iraq (Tr. 397-398).  In addition to the above-discussed

physical and mental problems, he experienced left leg pain and numbness and memory problems (Tr. 398).

### C. Medical Records[1]

#### 1. Records Related to Plaintiff's Treatment

November, 2010 records by Al-Saraf Raad, M.D. note Plaintiff's report of left ear blockage (Tr. 274). A November, 2012 annual psychiatric evaluation note Plaintiff's request for medication for epilepsy (Tr. 296). Plaintiff denied any mental problems (Tr. 296). He reported sleep disturbances due to back pain (Tr. 296). The report states that Plaintiff did not exhibit depression (Tr. 296). S. Navuluri, M.D. diagnosed Plaintiff with an "adjustment disorder" and assigned a GAF of 60[2] (Tr. 297). The same month, Dr. Al-Saraf completed a medical examination report, noting a decreased range of motion and tenderness of the lumbar spine and a "flat affect" with a "depressed mood" (Tr. 318).

June, 2013 records by Andrew Marcus, M.D. note "no complaint" except for left ear hearing loss (Tr. 352, 681). An MRI of the brain from the following month was unremarkable (Tr. 319, 664). Plaintiff was alert and oriented but exhibited "give-way" weakness in the lower extremities and decreased reflexes (Tr. 669). Dr. Marcus referred him for psychological treatment for Post Traumatic Stress Disorder ("PTSD") (Tr. 669). Chest

---

[1]Records significantly predating the alleged onset of disability date of November 10, 2010, while reviewed, are not included in the present discussion.

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34.

x-rays and imaging studies of the left thigh were also unremarkable (Tr. 666-667). An ENT examination was normal other than hearing loss in the left ear (Tr. 319-320, 693). Treating notes state that Plaintiff appeared "well-developed" and "well-nourished" but note a diagnosis of diabetes mellitus (Tr. 343). July records note that Plaintiff experienced uncontrolled diabetes due to medication non-compliance (Tr. 671). Treating records by Dr. Marcus from August, 2013 note Plaintiff's report of sleep disturbances due to PTSD (Tr. 341). Plaintiff also noted lower back and left leg pain and left-sided hearing loss (Tr. 341). Dr. Marcus noted lower back tenderness and range of motion limitations (Tr. 341). He diagnosed Plaintiff with low back pain and PTSD (Tr. 341). August, 2013 treating notes note a diagnosis of neuropathy (Tr. 348). Plaintiff admitted to past alcohol abuse but noted that he had quit using alcohol 15 years earlier (Tr. 349). Plaintiff reported depression without suicidal ideation (Tr. 349).

August, 2014 counseling records note that Plaintiff received medication for hallucinations and depression (Tr. 710). Therapist's notes state that Plaintiff spoke "some English" but was nonetheless seen "in [the] presence of a bilingual case manager" (Tr. 706, 751). He reported a high school education (Tr. 706, 753). He reported one suicide attempt in the past (Tr. 707). Plaintiff noted that he was prescribed Zoloft and Xanax by his primary care physician but that the medication combination was no longer helpful (Tr. 707, 752). He reported that he learned "some English" while living in America and was later hired by the United States Army as an interpreter in Iraq (Tr. 708). He reported depression due to

-6-

traumatic wartime events and his divorce (Tr. 708-709).  He was assigned a GAF of 45 due to depression, PTSD, medical problems, and financial and relationship problems[3] (Tr. 754, 762).  Plaintiff was directed to continue Zoloft and Seroquel for insomnia (Tr. 757). The same month, an MRI showing a small disc extrusion at L5-S1 was consistent with Plaintiff's report of "left-sided lumbar radicular symptoms" (Tr. 712).

In October, 2015, Dr. Al-Saraf performed an assessment of Plaintiff's physical abilities, noting the conditions of depression, hearing loss, hypertension, and back problems (Tr. 732). He found Plaintiff's back pain moderately severe (Tr. 734).  He found that neither weakness nor fatigue were factors in Plaintiff's limitations (Tr. 734).  He found that Plaintiff was also limited by depression (Tr. 736).  He concluded that Plaintiff was incapable of sitting, standing or walking for even one hour in an eight-hour workday (Tr. 735, 737).  He found lifting and carrying limitations of 10 pounds occasionally (Tr. 737).  He found that Plaintiff was unable to perform any pushing or pulling in either the upper or lower extremities (Tr. 738).  He found that Plaintiff would require a five to ten-minute rest period every hour in addition to regularly scheduled breaks (Tr. 738).  He found that Plaintiff would be required to lie down for substantial periods of the workday  (Tr. 738).  February, 2016 records by Raad Alsaraf, M.D.  note that Plaintiff's diabetes was controlled (Tr. 770).

---

[3]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability  *DSM–IV–TR* at 34.

## 2. Non-Treating Records

In August, 2012 Atul C. Shah, M.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report that he had come to the United States as a refugee and lived in a house by himself since being divorced two years earlier (Tr. 281). Plaintiff reported an elementary school education (Tr. 281). He reported that he was shot during the Iran-Iraq war while in his 20s (Tr. 281). As a result of the injury, he continued to experience back and leg pain (Tr. 281). He reported depression since his divorce (Tr. 281). Dr. Shah noted that Plaintiff had not had psychiatric hospitalization or undergone counseling (Tr. 281-282). He reported that he had been granted SSI benefits for back problems and was "trying to get them back" (Tr. 282). Dr. Shah assigned him a GAF of 60, noting that depression impacted Plaintiff's "ability to interact with the public, coworkers, and family members" (Tr. 283).

The same day, E. Montasir, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of long-term depression, chronic back pain with radiculopathy, and diabetes (Tr. 287). Dr. Montasir noted that Plaintiff was fully oriented and did not appear to be in acute distress (Tr. 288). He noted a normal gait and good hand grip (Tr. 288). Dr. Montasir concluded that Plaintiff "should be able to work as far as his physical condition is concerned" but experienced "some limitations" in the use of ropes, ladders, and scaffolding (Tr. 289). An x-ray of the lumbar spine showed minimal degenerative changes (Tr. 290). He limited Plaintiff to lifting and carrying 30 pounds (Tr.

289).

The same month, Zara Yousuf, M.D. performed a non-examining psychiatric assessment of Plaintiff on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 62-63).

Plaintiff failed to show up for consultative examinations scheduled for July and October, 2015 (Tr. 731, 740). In June, 2016, Jeff Hansen, M.D. answered interrogatories proffered by ALJ Fernandez, noting "no radiculopathy" during an earlier physical examination but a reduced range of motion (Tr. 746-747). He found that Plaintiff's back condition did not meet an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 748). He noted that "for 15 years," the MRI of the lumbar spine "has not really changed" (Tr. 748). He found that he was capable of lifting 30 pounds infrequently and 20 frequently; standing/walking for five out of eight hours; and sitting for six hours a day (Tr. 749). He limited Plaintiff to the occasional use of stairs and ramps and precluded the use of ladders and scaffolds (Tr. 749).

### C. Vocational Testimony

VE Stokes classified Plaintiff's past work as an interpreter as skilled and exertionally medium[4] (Tr. 400, 643). ALJ Fernandez then posed the following set of limitations to the

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [Exertionally] light work with only occasional climbing, stooping, kneeling, crouching, crawling, or balancing, and no[] use of ladders, ropes, or scaffolds. Could such an individual perform the past work? (Tr. 401).

The VE testified that the above limitations would allow for Plaintiff's past relevant work as an interpreter (Tr 401). He found that the position did not have transferrable skills (Tr. 404). The VE testified that the additional need to avoid hazards including moving machinery, work at unprotected heights, or an environment with more than moderate noise would not affect the job findings (Tr. 402). He testified further that the need to change positions every hour; a preclusion on the use of foot controls; a limitation to sedentary work, a preclusion on pushing or pulling; and/or, a limitation to a job requiring "only simple English would not affect his findings (Tr. 402). The VE testified that if the hypothetical question (including the amendments) were changed back to light rather sedentary work, the hypothetical individual could perform the light, unskilled work of a courier or messenger (90,000 positions in the national economy); receptionist or information clerk (83,000); and counter and rental clerk (111,000) (Tr. 404).

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

The VE testified that if the same individual were limited to sitting, standing, or walking for less than one hour a day, all competitive work would be eliminated (Tr. 404). He testified that the need to take a five-minute break every hour in addition to his regularly scheduled breaks would also preclude all work (Tr. 405). He stated that his testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for his testimony regarding a sit/stand option which was based on his professional experience (Tr. 405).

In response questioning by Plaintiff's attorney, the VE stated that a limitation to sedentary work which was unskilled with "simple instructions; routine changes; no independent interaction; only occasional interaction with supervisors, coworkers, or the general public; and limited to work involving communication with "basic English," the hypothetical individual would be unable to perform any of Plaintiff's past relevant work or any of the exertionally light jobs cited by the VE (Tr. 406).  The VE testified that the need to sleep for two hours of the workday; miss two or more days of work each month; or, be off task at least 15 percent of the workday due to psychological and physical problems would preclude all work (Tr. 407).

**D.   The ALJ's Determination (January 27, 2017)**

Citing the medical transcript, ALJ Fernandez found that Plaintiff experienced the severe impairments of "lumbar disc disease, osteoarthritis, diabetes mellitus, and hearing loss of the left ear" but that none of the conditions met or equaled a listed impairment found in

20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 359, 362).   She found that the condition of hypertension was non-severe (Tr. 360).

The ALJ found that Plaintiff experienced only mild restriction in understanding, remembering, and applying information; interacting with others; concentration, persisting, and maintaining pace; and the ability to adapt and manage himself (Tr. 361).   ALJ Fernandez determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [O]ccasional climbing, stooping, kneeling, crouching, crawling, or balancing; no climbing of ladders, ropes, or scaffolds; no hazards, including moving machinery and work at unprotected heights; noise level not to exceed a moderate level; requires the opportunity to change position after sitting two hours or standing and/or walking 90 minutes; and no use of foot controls (Tr. 362).

Citing the VE's testimony, the ALJ determined that while Plaintiff was capable of performing his past relevant work as an interpreter as well as the unskilled, light work of a office helper, information clerk, and storage facility rental clerk (Tr. 368, 404).

The ALJ discounted Plaintiff's professed degree of physical and psychological limitation.   She noted that the alleged hearing problems did not prevent Plaintiff from participating in the hearing (Tr. 365).   She observed that Plaintiff's treatment for back pain had been exclusively conservative and routine (Tr. 365).   She noted that Plaintiff had been advised to walk for 30 minutes on a regular basis by his own physician (Tr. 365).

The ALJ noted that Plaintiff did not show up for two consultative examinations scheduled by the SSA because "his attorney advised him not to attend" (Tr. 365).   The ALJ noted that "[a]t the very least, this indicates a failure to cooperate" and, "raises a question as

to what the results of such consultative examinations might have added to the record" (Tr. 365). The ALJ noted that Plaintiff's "description of pain appear[ed] extreme as to be implausible," observing that his claim that he slept around the clock and was required to sleep on the floor to relieve pain was unsupported by any of treatment records (Tr. 365).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff makes five arguments for remand, contending first that the ALJ erred by declining to allow him to either question Dr. Hansen regarding his June, 2016 interrogatory answers or submit supplemental interrogatories.  *Plaintiff's Brief,* 12, *Docket #18,* Pg ID 850. On a related note, Plaintiff argues second that Dr. Hansen's finding that the back problems did not meet or medically equal a listed impairment is based on "unsupported speculation;"

thus, the ALJ also erred in adopting Dr. Hansen's findings.  *Id.* at 16.  In his third argument, Plaintiff contends that the ALJ's rejection of Dr. Al-Saraf's disability opinion is unsupported by substantial evidence.  *Id.* at 18.  Fourth, Plaintiff argues that the absence of reference to either "language limitations" or psychological impairment in the RFC taints the ultimate non-disability finding.  *Id.* at 21.  Finally, he contends that the ALJ's credibility determination is unsupported by substantial evidence.  *Id.* at 24.

### A.  HALLEX

Plaintiff argues, in effect, that he was denied his right to a "full and fair" hearing because he was not given the opportunity to cross-examine Dr. Hansen by either interrogatory or at a supplemental hearing.  *Plaintiff's Brief* at 12 (*citing Hearings, Appeals and Litigation Law Manual* ("*HALLEX*") I-2-4-44).  Plaintiff also contends that the ALJ failed to respond to his objections to Dr. Hansen's findings.  *Id.* (*citing HALLEX* I-2-5-44).

 The pertinent facts are recounted in chronological order:

Following the remand to the administrative level, Plaintiff failed to appear for two consultative examinations scheduled by the SSA (Tr. 731, 740).  At the August 11, 2016 hearing, Plaintiff's attorney Randall E. Phillips admitted that he advised his client not to attend the examinations because "there ha[d] already been [consultative examinations]" held in August, 2012 (Tr. 391).

In May, 2016, the ALJ began a search for a medical expert willing to respond to interrogatories pertaining to Plaintiff's back condition (Tr. 606-607).  On June 8, 2016, the

ALJ was informed that a specialist, Dr. Hansen had been procured (Tr. 608).  Two weeks later, Mr. Phillips contacted ALJ Fernandez, noting that he "did not receive prior notice or an opportunity to respond or submit my own interrogatories" to Dr. Hansen  (Tr. 609).  He also requested "the opportunity to object and examine Dr. Hansen at the hearing" or, submit his own interrogatories citing *HALLEX,* I-2-5-42 and I-2-5-44 (Tr. 609).  In an August 4, 2016 pre-hearing brief, Mr. Phillips disputed Dr. Hansen's findings, noting that he "has not been allowed to submit counter interrogatories or question the ME as requested [on June 21, 2016] and reserves the right to do so if a favorable decision is not to be issued. . . ." (Tr. 613).  Mr. Phillips noted that he had not received a curriculum vitae for Dr. Hansen (Tr. 613).

At the August 11, 2016 hearing, Mr. Phillips restated his June, 2016 contention that he wasn't "given an opportunity to respond" to answers to interrogatories given by the ALJ to a non-examining medical (Tr. 382).  Plaintiff's counsel noted that the interrogatories "would support . . . a favorable decision. . . ." (Tr. 382).  He noted further that if a "favorable decision" were issued, he would not be required to do supplemental interrogatories (Tr. 382). In response, the ALJ stated that she would try to "obtain a curriculum vitae" for Dr. Hansen (Tr. 382).  Counsel stated that he ought to have "been shown the interrogatories composed by the ALJ before they were submitted" to the medical expert; and the opportunity to submit  his own interrogatories (Tr. 382).  The ALJ then requested the authority relied upon by Plaintiff (Tr. 383).  Mr. Phillips referred her to his June, 2016 correspondence but noted that he was currently unable to procure a copy (Tr. 383).  In response, the ALJ invited Mr. Phillips to

-16-

provide it "at any point" (Tr. 383).

Later the same day, both ALJ Fernandez and Mr. Phillips composed followup correspondence. As promised during the hearing (Tr. 382), ALJ Fernandez sent Plaintiff Dr. Hansen's resume (Tr. 644). ALJ Fernandez' cover letter, under the heading "Actions You Have a Right to Take," noted that Mr. Phillips was welcome to (1) submit written comments" pertaining to the interrogatory answers, (2) submit additional records, (3) "submit written questions to be sent to the author(s) of the new evidence," and, (4) request a supplemental hearing for the opportunity to testify and call witnesses (Tr. 644). The letter states further that unless the ALJ granted a fully favorable decision, she would grant the request for an additional hearing and "grant a request to question a witness if [she] determine[d] that questioning the witness is needed to inquire fully into the issues"[5] (Tr. 644). ALJ Fernandez concluded the full-page, single-spaced letter by noting that if she did not receive a response within 10 days, she would assume that Plaintiff's attorney did not wish to submit a written statement or records, request a supplemental hearing, or question Dr. Hansen orally or by interrogatory (Tr. 645).

Mr. Phillips' correspondence from the same day apparently composed prior to receipt of ALJ Fernandez letter, consists of the following:

Per our discussion at the hearing on 8/11/2016, I provide the authority

---

[5]

The ALJ's offer to allow Mr. Phillips to question the witness or request a supplemental hearing, *etc.* conforms with the requirements of *HALLEX,* I-2-7-30 (Proffer Procedures). https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html (last visited June 26, 2018).

regarding the ME interrogatories and my objections per Ex. 27E. [(Tr. 609)]. *See HALLEX* I-2-5-44 and I-2-7-30. However, in the event you decide to issue a favorable decision, then this issue is moot and I would withdraw any objection (Tr. 644).

On January 4, 2017 the ALJ composed another letter to Mr. Phillips following the receipt of additional post-hearing information (Tr. 654). The ALJ restated Plaintiff's "rights" to challenge the evidence through interrogatory or at a supplemental hearing (Tr. 654). The ALJ noted that if she did not hear from Mr. Phillips within 10 days of the receipt of the letter, she would assume that he did not wish to submit further information or request a supplemental hearing (Tr. 655). The transcript does not contain any correspondence by Mr. Phillips after August 11, 2016.

Plaintiff relies on *HALLEX* I-2-4-44 which states in pertinent part as follows:

An ALJ must rule on any objection or request by the claimant regarding the ME's response to interrogatories. The ALJ may rule on an objection on the record during the hearing or in a writing that the ALJ exhibits and associates with the record. An ALJ must allow a claimant or appointed representative to propose additional interrogatories to the ME or request a supplemental hearing to question the ME, even if the claimant or appointed representative previously had the opportunity to do so. https://www.ssa.gov/OP_Home /hallex /I-02/I-2-5-44.html)(last visited June 25, 2018).

I-2-4-44 states further that the ALJ's decision "must include the rationale for ruling against any objection" and, "[i]f the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision."

The failure to comply with *HALLEX,* by itself, does not provide grounds for remand by a reviewing court.  "'No circuit has held that the HALLEX creates constitutional rights because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights.'" *Dukes v. CSS*, 2011 WL 4374557, *9 (W.D. Mich. September 19, 2011) (*citing Davenport v. Astrue*, 417 Fed.Appx. 544, 547–48 (7th Cir. 2011)). "[W]hile the *HALLEX* procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings. *Id. (citing Bowie v. CSS,* 539 F.3d 395, 399 (6th Cir. 2008))(same).  Rather, the question before the reviewing Court is whether the claimant received due process.  Due process under the Fifth Amendment "requires that a Social Security hearing be 'full and fair.'" *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (*citing Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  In some circumstances, a *HALLEX* violation may result in a deprivation of due process.  *See Gaines v. CSS*, 2013 WL 4494966, *8-9 (E.D. Tenn. August 20, 2013)(failure to give claimant opportunity to "review and comment" on latter submitted evidence in violation of *HALLEX* also a violation of her due process rights).

The facts of this case do not show a *HALLEX* violation, much less a deprivation of Plaintiff's due process rights.  Plaintiff argues that the ALJ failed to acknowledge his June 21, 2016 request to cross-examine Dr. Hansen by either interrogatory or at a supplemental hearing.  *Plaintiff's Brief* at 12 (*citing* Tr. 609).  In an August 4, 2016 pre-hearing brief, Mr. Phillips, then in possession of a copy of Dr. Hansen's findings, noted that he "has not been

-19-

allowed to submit counter interrogatories or question the ME as requested [on June 21, 2016] and reserves the right to do so if a favorable decision is not to be issued. . . ." (Tr. 613). However, on August 11, 2016, the ALJ noted that she was adding Dr. Hansen's findings to the record, invited Mr. Phillips to submit  comments or records; submit his own set of interrogatories; and/or request a supplemental hearing (Tr. 644).  Although ALJ Fernandez concluded by stating that if she did not receive a response within 10 days, she would assume that he did not intend to challenge Dr. Hansen's findings, the record contains no indication that Mr. Phillips responded with a request to submit his own interrogatories, objected to Dr. Hansen's findings within the time frame set forth in the August11, 2016 letter, or requested a supplemental hearing.  While Plaintiff appears to argue that the ALJ did not address his June, 2016 "objection" to Dr. Hansen's findings made before the hearing, Plaintiff's prehearing request asked for "the *opportunity* to object and examine Dr. Hansen at the hearing" or, submit his own interrogatories (Tr. 609)(emphasis added).  The ALJ's August 11, 2016 correspondence which Mr. Phillips failed to respond to offered just such an opportunity.

Plaintiff's argument is further weakened by the fact that ALJ sent out a *second* letter on January 4, 2017 again inviting Mr. Phillips challenge additional post-hearing information (Tr. 654).   As such, ALJ Fernandez cannot be held responsible for Mr. Phillips' failure to respond to either the August 11, 2016 or January 4, 2017 offers to rebut Dr. Hansen's findings.

### B.  Dr. Hansen's Findings

On a related note, Plaintiff argues that Dr. Hansen's finding that the back problems did not meet or medically equal a listed impairment is based on "unsupported speculation" *Plaintiff's Brief* at 16.   He contends that the administrative findings are tainted by the ALJ's adoption of Dr. Hansen's findings. *Id.*

Dr. Hansen's findings, based on a summation of the relevant treating and consultative findings, is consistent with my own review of the record.  Dr. Hansen cited consultative records showing a reduced range of motion but "no radiculopathy" (Tr. 747).   He acknowledged Dr. Al-Saraf's treating records noting Plaintiff's report of numbness (Tr. 747). However he noted that imaging studies of the spine showed that the lumbar back condition was essentially unchanged from the time prior to the alleged onset of disability (Tr. 747-748). He observed that while Plaintiff had undergone multiple MRI studies, the records did not include nerve conduction or EMG studies supporting Plaintiff's allegations of significant lower extremity radiculopathy (Tr. 748).   He concluded that Plaintiff did not meet or medically equal Listing 1.04A (Tr. 748).

In turn, the ALJ's reliance on Dr. Hansen's finding that Plaintiff did not meet Listing 1.04A is well supported and explained.   Listing 1.04A requires a threshold showing of  a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. Part

404, Subpart P, Appendix 1 § 1.04.   Assuming that the MRI studies showing some degree of nerve root involvement meets the Listing's threshold showing, substantial evidence supports the ALJ's \finding that Plaintiff did not meet all of the additional requirements of 1.04A:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Standing alone, Dr. Hansen's finding that the transcript did not show the presence of lower extremity radiculopathy supports the ALJ's finding that Plaintiff did not meet the requirements for disability under Listing 1.04A.   The failure to present evidence of one of the elements of Listing 1.04A forecloses a finding of disability at Step Three.   *See Houston v. Colvin*, 2017 WL 82976, at *2 (E.D.Mich. January 10, 2017)(Drain, J.)(same).   While one treating record notes radicular symptoms (Tr. 669), substantial evidence found elsewhere in the record supports the finding that Plaintiff did not experience significant lower extremity symptoms.   The ALJ cited August, 2012 findings showing no motor or sensory deficits and no problems walking or climbing stairs (Tr. 363).

On a related note, Plaintiff disputes Dr. Hansen's finding that the failure to seek aggressive treatment undermined his claim of disabling symptoms (Tr. 748).   Plaintiff contends that Dr. Hansen failed to note that Plaintiff came to this country from a refugee camp, was later impoverished by a divorce, and relied on "charity care."   *Plaintiff's Brief* at

17.   However, the finding that Plaintiff's claims were undermined by his failure to seek treatment from a pain specialist or orthopedic surgery is not improper.  The records show that Plaintiff was able to undergo two MRI studies of the lumbar spine.  Given that MRI testing is a highly sophisticated diagnostic tool, Plaintiff's failure to also seek pain management treatment and/or undergo nerve conduction studies of the lower extremities undermined his claims of disabling pain.  As discussed further below, Plaintiff's failure to show up for either (free) psychological or physical examinations scheduled by the SSA, like his failure to pursue other conservative modalities, undermines his claims of disability.

Accordingly, the ALJ's reliance on Dr. Hansen's findings does not provide grounds for remand.

### C.  Dr. Al-Saraf's Findings

Plaintiff also disputes the ALJ's rationale for according "little weight" to treating physician Dr. Al-Saraf's findings.  *Plaintiff's Brief* at 18.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)); *See also* SSR 96-2p, 1996 WL 374188, at

*5 (July 2, 1996)).[6]   In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so.  *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The ALJ provided a fairly lengthy rationale for according Dr. Al-Saraf's opinion "little weight" (Tr. 364-365, 732-738).  She noted that his findings of numbness of the hands and feet were not supported by either clinical findings or imaging studies (Tr. 364).  She observed that Dr. Al-Saraf's finding that Plaintiff was incapable of walking even one hour in an eight-hour workday or lifting 10 pounds stood at odds with his finding that Plaintiff was able to live independently and care for his own needs (Tr. 364).  She noted that Dr. Al-

---

[6]

The administration rescinded SSR 96-2p on March 27, 2017.  *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017).  Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record.  20 C.F.R. §§ 404.1520b; 416.920c.  The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS*, 2017 WL 2838237, at *8 (W.D.Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)).  Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

-24-

Saraf's finding of extreme limitation were unsupported by his treating records or imaging studies (Tr. 364). She noted elsewhere that Plaintiff had been encouraged to "walk" by one treating source and to avoid only medium or heavy lifting (Tr. 365). She noted that Plaintiff not only eschewed "aggressive" treatment for the physical conditions but failed to pursue the "alternative treatment modalities" of physical therapy or chiropractic treatment (Tr. 365). Dr. Al-Saraf's findings are also contradicted by Dr. Montasir's August, 2012 finding of a normal gait, good hand grip, and only "some [postural] limitations" in his work abilities (Tr. 288-289).

Because the ALJ's rejection of Dr. Al-Saraf's assessment is well supported and well explained, the administrative determination should remain undisturbed.

### D. The Absence of Either Mental or Language Limitations From the RFC

Plaintiff notes that the pre-remand administrative decision by ALJ Fernandez contains findings that Plaintiff experienced depression and was limited to work using "basic English" *Plaintiff's Brief* at 21 (*citing* Tr. 16, 19). He faults the ALJ for declining to find either mental or language limitations in the current determination. *Id.*

Substantial evidence supports the ALJ's finding that the mental limitations did not cause "more than minimal limitation" in Plaintiff's ability to perform work activities (Tr. 360). She acknowledged a diagnosis of depression with psychotic features but noted that none of the treating or consultative records supported a finding of psychosis (Tr. 360). She cited Plaintiff's November, 2012 statement that he did not experience any "mental" problems

-25-

other than insomnia (Tr. 296, 360).  She correctly noted that the GAF of 60 (reflecting at most moderate psychological symptoms) and a score of 45 represented Plaintiff's level of functioning "only at the time of evaluation" and did not reflect his "functioning over time" (Tr. 360); *See Kornecky v. CSS,* 2006 WL 305648, *13 (6th Cir. February 9, 2006)(*citing Howard v. CSS,* 276 F.3d 235, 241 (6th Cir.2002))("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"); *Jordan v. CSS*, 2011 WL 891198, *5 (E.D. Mich. January 14, 2011)(GAF scores "subjective opinions, representing . . . snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work").  She noted that Plaintiff's allegations of bimonthly treatment stood at odds with records showing only "inconsistent mental health treatment" (Tr. 360-361).  She cited records showing that Plaintiff's symptoms abated with regular sleep and medication compliance (Tr. 361).  As discussed below, Plaintiff's claim that he experienced some degree of psychological limitation is strongly undermined by his failure to show up for the consultative psychological examination scheduled by the SSA.

The record also supports the conclusion that Plaintiff did not experience significant language barriers.  Plaintiff argues that his inability to "communicate in English" or, illiteracy directs a finding of disability.  *Plaintiff's Brief* at 22 (*citing* 20 C.F.R. Section 404, Subpart P, Appendix 2, § § 202.09, 201.17).  However, in finding that Plaintiff was capable of his past relevant work as an Arab/English interpreter, the ALJ cited Plaintiff's former employers' October, 2016 interrogatory responses stating that Plaintiff was capable of

communicating orally, reading, and writing in English (Tr. 650). While another page of the same shows answers of "N/A" to questions regarding Plaintiff's job description, primary language, and ability to communicate orally, read, and write in English, it is unclear whether the author of this portion of the report was not familiar with Plaintiff's work duties or simply believed that his job title of linguist mooted the questions regarding his primary language or ability to communicate in English (Tr. 649). In any case, the portion of the report submitted on December 15, 2016 stating that Plaintiff was capable of communicating orally, reading, and writing in English constitutes substantial evidence in support of the finding that he did not experience language barriers.

The evidence otherwise supports the ALJ's findings regarding Plaintiff's communicative abilities. While August, 2014 counseling records state that Plaintiff received counseling services "in [the] presence of a bilingual case manager" despite the ability to speak "some English," he may have opted to express mental health concerns in his native language despite his English fluency (Tr. 751). While Plaintiff alleges while interacting with representatives of the SSA that he received only an elementary school education (Tr. 221), he reported to a counselor that he had achieved a high school education (Tr. 706-753).

## E. Credibility

In his last argument, Plaintiff takes issue with the ALJ's finding that his allegations were undermined by his failure to seek either aggressive or alternative treatment. *Plaintiff's Brief* at 24. He notes that the ALJ failed to consider his limited daily activities in discounting

his credibility. *Id*. He also contends that the ALJ improperly discounted his credibility based on his failure to show up for two consultative examinations scheduled by the SSA. *Id*. at 26.

SSR 16-3p states that "If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." 2016 WL 1119029, at *5 (March 16, 2016). Factors to be considered in assessing a claimant's allegations include "(i) ... daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

The ALJ's determination that the evidence did not support the disability claims should remain undisturbed.   She noted that Plaintiff's treatment had been "routine and conservative," observing that his pain medication was limited to Motrin 800 (Tr. 365).  She noted that Plaintiff did not receive injections, physical therapy, chiropractic treatment, or any of the typical "low impact" modalities used to treat lumbar disc disease (Tr. 365).  She noted that Plaintiff had not received a surgical consult, much less a recommendation for surgery

(Tr. 365).  She observed that one of Plaintiff's treating sources advised him to walk for exercise, contrary to Plaintiff's claim that he was unable to perform the walking requirements for even sedentary work (Tr. 365).  The ALJ deemed Plaintiff's testimony that he slept 24 hours every day "implausible," noting that "if his pain were so severe . . . one would expect him to tell his physician so his treatment plan could be adjusted" (Tr. 365).

Finally, there is no error in the ALJ's finding that the failure to show up for two consultative examinations undermined Plaintiff allegations of limitation:

> [Plaintiff] testified that he did not attend two consultative examinations because his attorney advised him not to attend.  At the very least, this individuates a failure to cooperate.  It also raises a question as to what the results of such consultative examinations might have added to the record (Tr. 365).

The ALJ permissibly concluded that Plaintiff's failure to attend created an adverse inference. *See* 20 C.F.R. § 404.1518 (a)("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability . . . we may find that you are not disabled"); *see also Hollins v. Apfel*, 160 F.Supp.2d 834, 838 (S.D.Ohio,2001)("failure to attend a consultative examination permits an adverse inference to be made concerning a claimant's disability status").

Plaintiff's contention that his failure to appear at two consultative examinations was unfairly used against him is particularly audacious, given current counsel's acknowledgment (unaccompanied by explanation or excuse) that he himself advised his client against

-29-

attending the two examinations (Tr. 391).  Plaintiff's contention that the ALJ made an improper inference is akin to the proverbial defendant who has murdered his parents but requests mercy from the court because he is an orphan.[7]

Because the ALJ's decision was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with

---

[7]

Mr. Phillips' predilection for flouting the rules is further illustrated by his failure to comply with this Court's requirement that the length of a brief may not exceed 25 pages with a type size must be no smaller than 14 point font. E.D. Mich. LR 5.1(a)(3), 7.1(d)(3).  Mr. Phillips' brief is written in 11 point font and is 26 pages long.  I will give Mr. Phillips a pass this time, but future violations of the Local Rules will result in the striking of his entire brief.

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 29, 2018                        s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE


---

## CERTIFICATE OF SERVICE

I hereby certify on June 29, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on June 29, 2018.

                                            s/Carolyn M. Ciesla
                                            Case Manager for the
                                            Honorable R. Steven Whalen